[793 NYS2d 441]

In the Matter of JAMES G. KALPAKIS, an Attorney, Respondent.
GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT,
Petitioner.

Second Department, April 11, 2005

74

APPEARANCES OF COUNSEL

*Faith Lorenzo*, Hauppauge (*Mitchell T. Borkowsky* of counsel), for petitioner.

OPINION OF THE COURT

Per Curiam.

The Grievance Committee served the respondent with a petition dated December 18, 2003, containing six charges of professional misconduct. After a pretrial conference on February 25, 2004, and a hearing on April 27, 2004, the Special Referee sustained all six charges. The Grievance Committee now moves to confirm the Special Referee's report and impose such discipline upon the respondent and restitution, if any, as the Court deems just and proper. The respondent has neither cross-moved, replied to the Grievance Committee's motion, nor sought additional time in which to do so.

The petition alleges that prior to and as of June 1, 2000, the respondent maintained an IOLA checking account at the Bank of New York. From approximately June 1, 2000, through May 31, 2002, the respondent used that account incident to his law practice and deposited client funds therein.

Charge One alleges that the respondent breached his fiduciary obligations to a client by failing to preserve client funds entrusted to him, in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

On or before October 12, 2000, the respondent was retained by Fred Adelman on a one-third contingency fee basis, to represent him, as plaintiff, in a personal injury action (hereinafter the Adelman matter). The respondent settled that matter for $25,000 on or about October 12, 2000.

On or about October 12, 2000, the respondent received $16,667 from one of the defendants in the Adelman matter and deposited it into his escrow account. On or about October 31, 2000, he received $8,333 from a second defendant and deposited that into his escrow account. Between October 12, 2000, and December 28, 2000, the respondent withdrew $7,333 from his escrow account due to the contingent fee to which he was entitled.

On or about December 5, 2000, the respondent drew a check for $16,666.67 against the escrow account, payable to Fred Adelman as his share of the settlement. The check was not presented for payment until on or about January 17, 2001.

From approximately December 5, 2000, through January 17, 2001, the respondent should have maintained and preserved at least $16,666.67 in the escrow account for his client's benefit. During that interval, the balance in his escrow account fell below that amount on three occasions, falling to a low of $-4,003.77 on January 4, 2001.

Charge Two alleges that the respondent breached his fiduciary duty by converting client funds entrusted to him to a use other than that for which they were intended, in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

On or about January 4, 2001, the respondent's escrow account was overdrawn, resulting in a balance of $-4,003.77. Between that date and January 17, 2001, the respondent made four deposits totalling $63,338 into the escrow account, which represented funds entrusted to him for specific clients. Between January 4, 2001, and January 17, 2001, the respondent did not draw any checks or otherwise disburse any funds from that account on behalf of those four clients. On or about January 17, 2001, the respondent's check payable to Fred Adelman, which had been outstanding since December 5, 2000, was presented for payment and debited against the funds then on deposit and being held by the respondent for the benefit of other clients.

Charge Three alleges that the respondent breached his fiduciary obligations to a client by failing to preserve client funds entrusted to him, in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

On or before November 9, 2000, the respondent was retained by Edna Gordon, on a one-third contingency fee basis, to represent her as a plaintiff in a personal injury action. The respondent settled that matter for $35,000 on or about November 9, 2000.

On or about December 1, 2000, the respondent received the settlement check from the defendant in the Gordon matter and deposited it into his escrow account. On or about December 6, 2000, the respondent drew a check for $23,133.33 payable to Edna Gordon as her share of the settlement. That check was not presented for payment against the escrow account until January 4, 2001, four weeks later. From approximately December 1, 2000, through January 4, 2001, the respondent should have maintained and preserved at least $23,133.33 in the escrow account for the benefit of his client. On or about December 18, 2000, the balance in the escrow account was only $18,629.22.

Charge Four alleges that the respondent breached his fiduciary responsibility by converting client funds to his own use and benefit, in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Between August 2000 and January 2001, the respondent engaged in a pattern of wrongfully paying himself from the escrow account, purportedly on account of legal fees, before actually receiving and depositing the funds against which such fees should have been properly drawn.

## The Paladino Matter

On or about August 24, 2000, the respondent was retained by Jean Paladino on a one-third contingency fee basis to represent her as plaintiff in a personal injury action. The respondent settled that matter for $27,000 on or about August 24, 2000.

On or about August 24, 2000, and August 25, 2000, the respondent withdrew $9,000 from the escrow account on account of the contingent fee to which he was entitled in the Paladino matter. As of the date the respondent withdrew those fees, he had not yet received or deposited settlement proceeds from the defendant and no funds related to the Paladino matter were otherwise on deposit in the escrow account. The funds against which the respondent should have drawn his fee were actually deposited into the escrow account on September 5, 2000.

## The Quinonez Matter

On or before September 7, 2000, the respondent was retained by Louis Quinonez on a one-third contingency fee basis to represent him as plaintiff in a personal injury action. The respondent settled that matter on or about September 7, 2000.

On or about September 7, 2000, the respondent withdrew $3,000 from the escrow account on account of the contingent fee to which he was entitled in the Quinonez matter. As of that date, the respondent had not yet received or deposited settlement proceeds from the defendant and no funds related to the Quinonez matter were otherwise on deposit in the escrow account. The funds against which the respondent should have drawn his fee in the Quinonez matter were actually deposited into the escrow account on October 27, 2000.

## The Ramos Matter

On or before October 6, 2000, the respondent was retained by Jose Ramos on a one-third contingency fee basis, to represent him as plaintiff in a personal injury action. The respondent settled that matter for $13,000 on or about October 6, 2000.

On or about October 6, 2000, the respondent withdrew $4,238 from the escrow account on account of the contingent fee to which he was entitled in the Ramos matter. As of that date, he had not yet received or deposited settlement proceeds from the defendant and no funds related to the Ramos matter were otherwise on deposit in the escrow account. The funds against which the respondent should have drawn his fee were actually deposited into the escrow account on November 6, 2000.

The Cromer Matter

On or before October 12, 2000, the respondent was retained by Michelle Cromer and Linda Cromer on a one-third contingency fee basis to represent them as plaintiffs in a personal injury action. The respondent settled that matter for $28,500 on or about October 12, 2000.

On that day, he withdrew $9,000 from the escrow account on account of the contingent fee to which he was entitled in the Cromer matter. As of that date, the respondent had not yet received or deposited settlement proceeds from the defendant and no funds related to the Cromer matter were otherwise on deposit in the escrow account. The funds against which the respondent should have drawn his fee were actually deposited into the escrow account on October 27, 2000, and October 30, 2000.

The Politis Matter

On or before November 9, 2000, the respondent was retained by Nicky Politis on a one-third contingency fee basis to represent her as plaintiff in a personal injury action. The respondent settled that matter for $6,000 on or about November 9, 2000.

On that date, the respondent withdrew $2,000 from the escrow account on account of the contingent fee to which he was entitled in the Politis matter. As of that date, the respondent had not yet received or deposited settlement proceeds from the defendant and no funds related to the Politis matter were otherwise on deposit in the escrow account. The funds against which the respondent should have drawn his fee were actually deposited into the escrow account on November 17, 2000.

The Gordon Matter

As previously mentioned, on or before November 9, 2000, the respondent was retained by Edna Gordon on a one-third contingency fee basis in a personal injury action. The Gordon matter was settled for $35,000.

Between November 9, 2000, and November 24, 2000, the respondent withdrew $11,666.67 from the escrow account on ac-

count of the contingent fee to which he was entitled in the Gordon matter. As of that time, the respondent had not yet received or deposited settlement proceeds from the defendant and no funds relating to the Gordon matter were otherwise on deposit in the escrow account. The funds against which the respondent should have drawn this fee were actually deposited on December 1, 2000.

Charge Five alleges that the respondent failed to maintain all required bank and bookkeeping records for the escrow account, in violation of Code of Professional Responsibility DR 9-102 (d) (2), (8) and (9) (22 NYCRR 1200.46 [d] [2], [8], [9]).

The respondent failed to maintain a record or ledger book for the escrow account showing the source of all funds deposited therein, the names of all persons for whom funds were held, the amount of such funds, and the descriptions, amounts, and names of all persons to whom such funds were disbursed. The respondent failed to maintain all checkbooks and check stubs, bank statements, canceled checks, and duplicate deposit slips for the escrow account. He failed to make accurate entries in his ledger book of all deposits into, and disbursements from the escrow account at or near the time of the act, condition, or event recorded. The respondent failed to maintain required bank and bookkeeping records for seven years after the events which they were to record.

Charge Six alleges that the respondent neglected a legal matter entrusted to him, in violation of Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]).

On or about April 14, 1998, Dorothy Smith retained the respondent to represent her in a personal injury action against Trans World Airlines arising out of a slip and fall accident which occurred on or about August 9, 1997. From approximately April 14, 1998 through August 9, 2000, the respondent failed to prosecute Dorothy Smith's claim in a diligent manner. From approximately April 14, 1998 through March 4, 2001, the respondent failed to respond to Dorothy Smith's repeated inquiries in a diligent manner. The statute of limitations for commencing a personal injury action on behalf of Dorothy Smith expired on or about August 9, 2000. The respondent failed to commence an action on her behalf within the three-year statute of limitations.

Based on the respondent's admissions and the evidence adduced, the Special Referee properly sustained all six charges. The Grievance Committee's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, the Grievance Committee points out that the respondent was issued a letter of caution on June 24, 1999, for failing to represent his client in a zealous manner and for failing to keep his client fully informed. At the hearing the respondent sought favorable consideration on the basis of his general background as an individual devoted to his family, active in religious and civic communities, and his allocation of pro bono time to the elderly, the needy and the indigent, as well as his expressed remorse in determining the appropriate measure of discipline to impose.

The Special Referee noted that with respect to Charge Four, there is no question that the withdrawal of fees before the deposit of settlement checks was not an accounting error but rather, was deliberate. The fact that clients' shares of settlements were not issued until after the settlement checks were deposited and cleared undermines the respondent's position attributing his conduct to a mistake. As to Charge Six, where the respondent admits neglecting a legal matter and allowing the statute of limitations to run, there was no testimony advanced by way of explanation or mitigation, other than his hectic schedule.

Under the totality of circumstances, whereby the respondent admittedly engaged in serious misconduct with respect to his handling of his escrow account and client funds entrusted to him as a fiduciary, notwithstanding that the clients were paid, and neglected a client matter resulting in claims being time-barred, the respondent is suspended from the practice of law for two years.

PRUDENTI, P.J., H. MILLER, S. MILLER, RITTER and SANTUCCI, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that the respondent, James G. Kalpakis, is suspended from the practice of law for a period of two years, commencing May 11, 2005, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months before the expiration of the period of two years, upon furnishing satisfactory proof that during that period he (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR

691.10), and (3) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, James G. Kalpakis, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, James G. Kalpakis, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).